SEYFARTH SHAW LLP
Brian P. Long (SBN 232746)
bplong@seyfarth.com
601 South Figueroa Street, Suite 3300
Los Angeles, California 90017-5793
Telephone:   (213) 270-9600
Facsimile:   (213) 270-9601

SEYFARTH SHAW LLP
Reiko Furuta (SBN 169206)
rfuruta@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, California 90067
Telephone:   (310) 277-7200
Facsimile:   (310) 201-5219

Attorneys for Defendants
RAYPAK, INC. and RICH BENDURE

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN VALLE URENA, individually and on behalf of all similarly situated individuals,<br><br>        Plaintiff,<br><br>    v.<br><br>RAYPAK, INC., a California corporation; RICH BENDURE, as individual; and DOES 1-100;<br><br>        Defendants. | Case No.   2:22-cv-2636<br><br>**DEFENDANT RICH BENDURE'S NOTICE OF REMOVAL**<br><br>(Ventura County Superior Court Case No. 56-2022-00563198-CU-OE-VTA)<br><br>Date Action Filed:  February 25, 2022 |

81746848v.2

1    TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL

2  DISTRICT OF CALIFORNIA AND TO PLAINTIFF, KEVIN VALLE URENA, AND

3  HIS ATTORNEYS OF RECORD:

4    PLEASE TAKE NOTICE that Defendant Rich Bendure ("Bendure") file this

5  Notice of Removal, pursuant to 28 U.S.C. §§ 1332(c), 1332(d)(2), 1441(a), 1446, and

6  1453, to effectuate the removal of the above-captioned action from the Superior Court for

7  the County of Ventura to the United States District Court for the Central District of

8  California.

9    This Court has original jurisdiction under 28 U.S.C. §§ 1332(c), (d)(2)—the Class

10  Action Fairness Act of 2005 ("CAFA"). Removal is proper for the following reasons:

# I.    BACKGROUND

12    1.    On February 25, 2022, Plaintiff Keven Valle Urena ("Plaintiff") filed a class

13  action complaint in the Superior Court of California for the County of Ventura, titled

14  "*KEVEN VALLE URENA, individually and on behalf of similarly situated individuals v.*

15  *RAYPAK, INC., a California Corporation; RICH BENDURE, an individual; and Does 1-*

16  *100,*" Case No. 56-2022-00563198-CU-OE-VTA ("Complaint").

17    2.    On March 8, 2022, defendant Raypak, Inc.'s ("Raypak") registered agent for

18  service of process in California received, via process server, the Summons; Complaint;

19  Civil Case Cover Sheet; and Notice of Case Assignment and Mandatory Appearance. On

20  April 7, 2022 Raypak filed an Answer to the Complaint. Raypak consents to removal

21  and is filing a Joinder concurrently with the filing of this Notice.

22    3.    On March 22, 2022, Bendure was served via personal service with the

23  Summons; Complaint; Civil Case Cover Sheet; and Notice of Case Assignment and

24  Mandatory Appearance. A true and correct copy of the packet received by Bendure is

25  attached hereto as **Exhibit A**.

26    4.    On April 19, 2022, Bendure filed his Answer to Plaintiff's Complaint in

27  Ventura County Superior Court. A true and correct copy of the Answer filed to

28  Plaintiff's Complaint is attached hereto as **Exhibit B**.

5.      Bendure has not filed or received any other pleadings or papers, other than the pleadings described as Exhibit A through Exhibit B, in this action prior to this Notice of Removal.

## II.    TIMELINESS OF REMOVAL

6.      The time for filing a Notice of Removal does not run until a party has been formally served with the summons and complaint under the applicable state law "setting forth the claim for relief upon which such action or proceeding is based" or, if the case stated by the initial pleading is not removable, after receipt of any "other paper from which it may be first ascertained that the case is one which is or has become removable." 28 U.S.C. §§ 1446; *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999) (holding that "a named defendant's time to remove is triggered by simultaneous service of the summons and complaint").

7.      The service of process which triggers the 30-day period to remove is governed by state law. *City of Clarksdale v. BellSouth Telecommunications, Inc.*, 428 F.3d 206, 210 (5th Cir. 2005) ("Although federal law requires the defendant to file a removal motion within thirty days of service, the term 'service of process' is defined by state law.").

8.      This Notice of Removal is timely because it is filed within thirty (30) days of service of the Complaint, by personal service on Bendure on March 22, 2022. Cal. Civ. Proc. Code § 415.10 ("A summons may be served by personal delivery of a copy of the summons and of the complaint to the person to be served. Service of a summons in this manner is deemed complete at the time of such delivery."); 28 U.S.C. § 1446(b). Thirty (30) days from the service of the Complaint on Bendure on March 22, 2022 is April 21, 2022.

9.      Plaintiff asserts **nine (9)** causes of action in his Complaint: (1) Failure to Pay Minimum Wages; (2) Failure to Pay Overtime Wages; (3) Failure to Provide Meal Periods or Premium Pay in Lieu Thereof; (4) Failure to Provide Rest Periods or Premium Pay in Lieu Thereof; (5) Failure to Reimburse Necessary Business Expenses; (6) Failure

2

to Provide and Maintain Accurate Records; (7) Failure to Pay Wages When Due; (8) PAGA Penalties; and (9) Violation of California's Unfair Competition Law.  (Ex. A, Complaint, ¶¶ 20-87.)

10.    The Complaint seeks to certify a class of "[a]ll persons who worked at least one 3.5-hour shift as a non-exempt employee in the State of California from the period four years prior to the filing of the Action and the date of trial."  (Ex. A, Complaint, ¶ 13.)

11.    Plaintiff's Ninth Cause of Action is based on an alleged "Violation of California's Unfair Competition Law" ("UCL").  (Ex. A, Complaint, ¶¶ 83-87.)  The statute of limitations on Plaintiff's Ninth Cause of Action for UCL is four years.  (*See* Cal. Bus. & Prof. Code § 17208.)

12.    Plaintiff alleges that "Defendants' knowing violations of the Labor Code and IWC Wage Order No. 4 constitutes an unlawful business practice as set forth in Business & Professions Code § 17200." (Ex. A, Complaint, ¶85.)

13.    Accordingly, for purposes of the calculations in this Notice of Removal, the relevant time period starting "four years prior to the filing of the Action" is from **February 25, 2018** until the present.

## III.    CLASS ACTION FAIRNESS ACT ("CAFA") REMOVAL

14.    This Court has original jurisdiction of this action under CAFA, codified in pertinent part at 28 U.S.C. Section 1332(d)(2).  As set forth below, this action is properly removable, pursuant to 28 U.S.C. Section 1441(a), in that this Court has original jurisdiction over the action, because the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, and the action is a class action in which at least one class member is a citizen of a state different from that of a defendant.  28 U.S.C. §§ 1332(d)(2) & (d)(6).  Furthermore, the number of putative class members is greater than 100.  28 U.S.C. § 1332(d)(5)(B); Declaration of Susan Irwin in Support of Bendure's Notice of Removal ("Irwin Decl."), ¶ 5.

### A.    Plaintiff And Bendure Are Minimally Diverse

3

15.    CAFA requires only minimal diversity for the purpose of establishing federal jurisdiction; that is, at least one purported class member must be a citizen of a state different from any named defendant.  28 U.S.C. § 1332(d)(2)(A).  In the instant case, Plaintiff is a citizen of a state (California) that is different from the state of citizenship of Bendure (who is a citizen of Georgia).

### 1.    Plaintiff Is A Citizen Of California

16.    For purposes of determining diversity, a person is a "citizen" of the state in which he or she is domiciled.  *Kantor v. Wellesley Galleries, Inc.*, 704 F.2d 1088, 1090 (9th Cir. 1983) ("To show state citizenship for diversity purposes under federal common law a party must … be domiciled in the state").  Residence is *prima facie* evidence of domicile.  *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994) ("the place of residence is prima facie the domicile"); *see also Zavala v. Deutsche Bank Trust Co. Americas*, 2013 WL 3474760, at *3 (N.D. Cal. July 10, 2013) (where a plaintiff's complaint alleges he resides in California, "in the absence of evidence to the contrary, [plaintiff] is a California citizen for diversity purposes").  Citizenship is determined by the individual's domicile at the time that the lawsuit is filed.  *Armstrong v. Church of Scientology Int'l*, 243 F.3d 546, 546 (9th Cir. 2000) ("For purposes of diversity jurisdiction, an individual is a citizen of his or her state of domicile, which is determined at the time the lawsuit is filed") (citing *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986)).

17.    Plaintiff alleges that he resides in the State of California.  (Ex. A, Complaint, ¶ 1; "Plaintiff Keven Valle Urena ("Plaintiff") is a resident of Camarillo, Ventura County, California.") Plaintiff's intent to remain domiciled in California is further evident from the fact that he brought his lawsuit against Bendure and Defendant Raypak in Ventura County Superior Court.  Accordingly, Plaintiff is a citizen of California.

### 2.    Bendure Is Not A Citizen Of California

DEFENDANT BENDURE'S NOTICE OF REMOVAL

18.     Bendure is, and was at the time of the filing of this action, a citizen of a state other than California as he resides and is domiciled in Georgia. (Rich Bendure Declaration "Bendure Decl.", ¶ 5.)

19.     Because Plaintiff is a citizen of California and Bendure is a citizen of Georgia, minimal diversity exists for purposes of CAFA.

20.     **Doe Defendants.**  Pursuant to 28 U.S.C. § 1441(a), the residence of fictitious and unknown defendants should be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. § 1332.  *Fristoe v. Reynolds Metals Co.,* 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition); *see also Soliman v. Philip Morris, Inc.*, 311 F. 3d 966, 971 (9th Cir. 2002) ("citizenship of fictitious defendant is disregarded for removal purposes and becomes relevant only if and when the plaintiff seeks leave to substitute a named defendant"). Indeed, the presence of "Doe" defendants in this case has no bearing on diversity of citizenship for removal.  Thus, the existence of "Does 1-100" in the Complaint does not deprive this Court of jurisdiction.  *Abrego v. Dow Chemical Co.*, 443 F.3d 676, 679-80 (9th Cir. 2006) (rule applied in CAFA removal).

**B.     The Amount In Controversy Exceeds The Statutory Minimum**

21.     CAFA requires that the amount in controversy exceed $5,000,000, exclusive of interest and costs.  28 U.S.C. § 1332(d)(2).  Under CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000.  28 U.S.C. § 1332(d)(6).  In addition, Congress intended for federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (*e.g.*, damages, injunctive relief, or declaratory relief)."  Senate Judiciary Committee Report, S. Rep. No. 109-14, at 42 (2005), *reprinted in* 2005 U.S.C.C.A.N. 3, 40.  The Senate Judiciary Committee's Report on the final version of CAFA also makes clear that any doubts regarding the maintenance of interstate class actions in state or federal court should be

5

resolved in favor of federal jurisdiction.  *Id*. at 42-43 ("if a federal court is uncertain about whether 'all matters in controversy' in a purposed class action 'do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case . . . .  Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions.  Its provision should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").

22.    **Preponderance Of The Evidence Standard.**  Plaintiff's Complaint does not allege the amount in controversy for the class he purports to represent.  Where a complaint does not allege a specific amount in damages, the removing defendant bears the burden of proving by a **preponderance of the evidence** that the amount in controversy exceeds the statutory minimum.  In *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588 (2013), the U.S. Supreme Court held that the proper burden of proof imposed upon a defendant to establish the amount in controversy is the preponderance of the evidence standard.  *Accord Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 977 (9th Cir. 2013) ("the proper burden of proof imposed upon a defendant to establish the amount in controversy is the preponderance of the evidence standard").

23.    In 2011, Congress amended the federal removal statute to specify that, where the underlying state practice "permits recovery of damages in excess of the amount demanded . . . removal of the action is proper on the basis of an amount in controversy asserted . . . if the district court finds, by the *preponderance of the evidence*, that the amount in controversy exceeds the amount specified in section 1332(a)."  Pub.L. 112–63, December 7, 2011, 125 Stat. 758, § 103(b)(3)(C) (codified at 28 U.S.C. § 1446(c)(2) (emphasis added)); *accord Abrego*, 443 F.3d 676, 683 (9th Cir. 2006) ("Where the complaint does not specify the amount of damages sought, the removing defendant must prove by a preponderance of the evidence that the amount in controversy requirement has been met"); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 701 (9th Cir. 2007) ("the complaint fails to allege a sufficiently specific total amount in controversy … we

6

therefore apply the preponderance of the evidence burden of proof to the removing defendant"). The defendant must show that it is "more likely than not" that the jurisdictional threshold is met. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996) ("where a plaintiff's state court complaint does not specify a particular amount of damages, the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds $50,000. Under this burden, the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds that amount"); *Schiller v. David's Bridal, Inc.*, 2010 WL 2793650, at *2 (E.D. Cal. July 14, 2010) (same).

24.    To satisfy this standard, the "Defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 135 S.Ct. 547, 554 (2014); *see also Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) ("Because some remnants of our former antiremoval presumption seem to persist, we reaffirm three principles that apply in CAFA removal cases. First, a removing defendant's notice of removal 'need not contain evidentiary submissions' but **only plausible allegations** of the jurisdictional elements"; "An assertion that the amount in controversy exceeds the jurisdictional threshold is not defeated merely because it is equally possible that damages might be 'less than the requisite ... amount'") (emphasis added).

25.    The burden of establishing the jurisdictional threshold "is not daunting, as courts recognize that under this standard, a removing defendant is not obligated to research, state, and prove the plaintiff's claims for damages." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204-05 (E.D. Cal. 2008) (internal quotations omitted); *see also Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) ("the parties need not predict the trier of fact's eventual award with one hundred percent accuracy").

26.    It is well-settled that "the court must accept as true plaintiff's allegations as plead in the Complaint and assume that plaintiff will prove liability and recover the

7

81746848v.2

damages alleged." *Muniz v. Pilot Travel Ctrs. LLC*, 2007 WL 1302504, *3 (E.D. Cal. May 1, 2007) (denying motion for remand of a class action for claims under the California Labor Code for missed meal and rest periods, unpaid wages and overtime, inaccurate wage statements, and waiting-time penalties).

27.    As explained by the Ninth Circuit, "the amount-in-controversy inquiry in the removal context is not confined to the face of the complaint." *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004); *see also Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013) (holding that the ordinary preponderance of the evidence standard applies even if a complaint is artfully pled to avoid federal jurisdiction); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 702 (9th Cir. 2007) (holding that even if a plaintiff affirmatively pled damages less than the jurisdictional minimum and did not allege a sufficiently specific total amount in controversy, the removing defendant is still only required to show by a preponderance of evidence that the amount in controversy exceeds the jurisdictional threshold).

28.    **The Court Must Assume A 100% Violation Rate Based On Plaintiff's Class-Wide Allegations.**  If a plaintiff asserts statutory violations, the court must assume that the violation rate is 100% unless the plaintiff specifically alleges otherwise:

> As these allegations reveal, plaintiff includes no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%, used by defendant in its calculations.  Plaintiff is the "master of [her] claim[s]," and if she wanted to avoid removal, she could have alleged facts specific to her claims which would narrow the scope of the putative class or the damages sought.  She did not.

*Muniz*, 2007 WL 1302504, at *4 (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987); *see also Wheatley v. MasterBrand Cabinets*, 2019 WL 688209, at *5 (C.D. Cal. Feb. 19, 2019) ("Defendant and the Court must rely on assumptions regarding the rate of the alleged violations … Plaintiff does not allege that some putative class members were subject to distinct policies. The Court therefore finds the assumption that uniform … policies were applied to **all** putative class members reasonable") (emphasis added);

8

*Soratorio v. Tesoro Ref. and Mktg. Co., LLC*, 2017 WL 1520416, at *3 (C.D. Cal. Apr. 26, 2017) ("Plaintiff's Complaint could be reasonably read to allege a 100% violation rate.  The Complaint notes that Defendant 'did not provide' Plaintiff and the other class members 'a thirty minute meal period for every five hours worked,' and that this was Defendant's 'common practice.'  It also alleges that Defendant had a practice of 'requiring employees to work for four hours and more without a rest period' and that Defendant had a 'common practice' of failing to provide required breaks."); *Arreola v. The Finish Line*, 2014 WL 6982571, *4 (N.D. Cal. Dec. 9, 2014) ("District courts in the Ninth Circuit have permitted a defendant removing an action under CAFA to make assumptions when calculating the amount in controversy—such as assuming a 100 percent violation rate, or assuming that each member of the class will have experienced some type of violation—when those assumptions are reasonable in light of the allegations in the complaint."); *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010), *aff'd sub nom. Coleman v. Estes Exp. Lines, Inc.*, 631 F.3d 1010 (9th Cir. 2011) ("[C]ourts have assumed a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation").

29.    Numerous other District Courts have similarly concluded that alleging a policy of noncompliance in a complaint justifies the assumption of a 100 percent violation rate.  *See Franke v. Anderson Merchandisers LLC*, 2017 WL 3224656, at *2 (C.D. Cal. July 28, 2017) ("Courts in this Circuit have generally found the amount in controversy satisfied where a defendant assumes a 100% violation rate based on allegations of a 'uniform' illegal practice—or other similar language—and where the plaintiff offers no evidence rebutting this violation rate"); *Torrez v. Freedom Mortg., Corp.*, 2017 WL 2713400, at *3-5 (C.D. Cal. June 22, 2017) (where complaint alleged "FMC engaged in a pattern and practice of wage abuse against its hourly-paid or non-exempt employees within the state of California," the complaint "can reasonably be interpreted to imply nearly 100% violation rates"); *Franke v. Anderson Merchandisers LLC*, 2017 WL 3224656, at *2 (C.D. Cal. July 28, 2017) ("Courts in this Circuit have

9

generally found the amount in controversy satisfied where a defendant assumes a 100% violation rate based on allegations of a 'uniform' illegal practice – or other similar language – and where the plaintiff offers no evidence rebutting this violation rate"); *Feao v. UFP Riverside, LLC*, 2017 WL 2836207, at *5 (C.D. Cal. June 26, 2017) ("Plaintiff's allegations contain no qualifying words such as 'often' or 'sometimes' to suggest less than uniform violation that would preclude a 100 percent violation rate."); *Soratorio, LLC*, 2017 WL 1520416, at *3 ("Plaintiff's Complaint could be reasonably read to allege a 100% violation rate. The Complaint notes that Defendant 'did not provide' Plaintiff and the other class members 'a thirty minute meal period for every five hours worked,' and that this was Defendant's 'common practice.' It also alleges that Defendant had a practice of 'requiring employees to work for four hours and more without a rest period' and that Defendant had a 'common practice' of failing to provide required breaks."); *Ritenour v. Carrington Mortg. Servs. LLC*, 228 F. Supp. 3d. 1025, 1030 (C.D. Cal. 2017) ("Given the vague language of the Complaint and the broad definition of the class, it is reasonable for Defendant to assume a 100% violation rate – especially since Plaintiffs offer no alternative rate to challenge Defendant's calculations."); *Jones v. Tween Brands, Inc.*, 2014 WL 1607636, at *3 (C.D. Cal. Apr. 22, 2014) (using 100 percent violation rate for waiting-time penalties since the complaint did not limit the number or frequency of violations).

30.    The alleged amount in controversy in this class action, in the aggregate, exceeds $5,000,000. Plaintiff's Complaint seeks to certify, and seeks relief on behalf of, "[a]ll persons who worked at least one 3.5-hour shift as a non-exempt employee in the State of California from the period four years prior to the filing of the Action and the date of trial." (Ex. A, Complaint, ¶ 13.) Given that Plaintiff's Complaint was filed on February 25, 2022, for purposes of the calculations in this Notice of Removal the "relevant time period" is from **February 25, 2018** until the present.

31.    During the relevant time period identified in the Complaint, defendant Raypak employed approximately 340 non-exempt hourly employees at its facilities in

DEFENDANT BENDURE'S NOTICE OF REMOVAL

California, who worked a total of approximately 56,823 workweeks.  (Irwin Decl., ¶ 5.) The average hourly rate of pay for these individuals is approximately $32.59 per hour during the proposed class period.  (Irwin Decl., ¶ 6.)

32.    Plaintiff seeks to recover, on behalf of himself and the alleged class, unpaid wages and penalties for Defendant's alleged failure to pay minimum and overtime wages, failure to provide meal and rest breaks, failure to pay all wages due upon resignation or termination of employment, failure to provide accurate and complete itemized wage statements, unreimbursed business expenses, and unfair business practices.  (Ex. A, Complaint.)  Plaintiff also seeks attorneys' fees and costs.  (Ex. A, Complaint, Prayer for Relief.)

33.    As set forth below, the alleged amount in controversy implicated by the class-wide allegations exceeds $5,000,000.  **All calculations supporting the amount in controversy are based on the Complaint's allegations, assuming, without any admission of the truth of the facts alleged and assuming solely for purposes of this Notice of Removal that liability is established.**

34.    The calculations below show that the alleged amount in controversy exceeds $5,000,000, when considering non-exempt employees at Raypak's facilities, such as Plaintiff, and when considering just a few of the causes of action alleged in the Complaint.

### 1.    Meal and Rest Period Claims

35.    Plaintiff seeks payments for alleged denial of or missed or interrupted meal periods and rest periods.  (Ex. A, Complaint, ¶¶ 9-11, 34-48.)  Plaintiff's Complaint alleges that "As a matter of uniform and systemic policy, Raypak failed to authorize and/or permit employees to take bona fide meal and rest breaks pursuant to Labor Code § 226.7 based on several uniform policies and practices.  First, Plaintiff's [SIC] implemented a bell system policy to alert employees when it was time to go and return from breaks, which results in the provision of meal periods that are frequently less than 30 minutes illegally depriving employees of a full meal period or premium pay in lieu

11

thereof.  Paypak also implemented an auto-deduct policy subtracting 30-minutes of time worked for every employee for each shift worked regardless of whether a compliant meal period was taken and of the length."  (Ex. A, Complaint, ¶ 9.)  Plaintiff's Complaint alleges that "Raypak requires employees to be on the facility floor or at their workstation before the end of the lunch period.  This results in Raypak counting the time employees stand in the facility or workstation waiting for the bell to ring as part of the 30-minute meal period – illegally depriving employees of a full, net 30 minute meal period in which they are relieved [SIC] all employer control.  In conjunction with Raypak's rounding policy, this policy frequently causes employees to take late meal periods – after more than five hours into a shift – and/or cut meal periods short to return to work or risk being disciplined for being late to the facility or workstation"  (Ex. A, Complaint, ¶ 10.) Plaintiff's Complaint alleges that "In failing to authorize and/or permit timely and/or uninterrupted meal and rest periods, Raypak has also implemented a uniform policy of denying compensation in lieu of meal and rest periods to its non-exempt employees." (Ex. A, Complaint, ¶ 11.)  Based on these alleged meal period violations, Plaintiff claims that "Plaintiff and the Class Members were not paid one hour of pay at their regular rate of pay for each day that a meal period was not lawfully provided."  (Ex. A, Complaint, ¶ 82.)

36.    Plaintiff's Complaint further alleges that "Defendants failed to relieve Plaintiff and Class Members from all duty when on their meal period by requiring Plaintiff and Class Members to return to the facility and/or their workstation before the end of their 30-minute meal period.  This policy and/or practice also required that employees remain under Defendants' control while on their meal periods.  Additionally, on information and belief, numerous Class Members, including Plaintiff, were required [SIC] take late meal periods, interrupt them, or remain on duty due to the combination of Defendants' scheduling practices and policies.."  (Ex. A, Complaint, ¶ 38.)  Plaintiff's Complaint further alleges that "Defendants did not pay Plaintiff and Class Members all

DEFENDANT BENDURE'S NOTICE OF REMOVAL

meal period premium wages when meal periods were missed, interrupted by work, and taken late" (Ex. A, Complaint, ¶ 39.)

37.    Plaintiff's Complaint further alleges that "Defendants failed to implement a lawful rest period policy that relieved Plaintiff and Class Members from all duties during rest periods because Defendants had a policy and practice of requiring Plaintiff and Class Members to return to the facility and/or their workstations before the end of their 10-minute rest period.  This policy and/or practice also required that employees remain under Defendants' control while on their rest periods.  Additionally, on information and belief, numerous Class Members, including Plaintiff, were required [SIC] take interrupted rest periods or remain on duty due to the combination of Defendants' scheduling practices and policies." (Ex. A, Complaint, ¶ 46.)

38.    For these alleged meal period violations, Plaintiff seeks "one additional hour of pay at their regular rate of compensation for each workday that a compliant meal period was not provided, and interest thereon, along with applicable civil penalties" (Ex. A, Complaint, ¶ 40).

39.    For these alleged rest break violations, Plaintiff seeks "an additional hour of pay at their regular rate of pay for each shift that a compliant rest period was not provided." (Ex. A, Complaint, ¶ 48.)

40.    California Labor Code Section 512 provides that "[a]n employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes . . . ."  Section 512 further provides that "[a]n employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes . . . ."  California Labor Code Section 226.7 requires employers to pay an extra hour's pay to employees who are not provided full or timely meal periods or rest periods.  Case law makes clear that an employee is entitled to an additional hour's wages per day, for both a rest and meal period violation each day.  *Lyon v. W.W. Grainger, Inc.*, 2010 WL 1753194, *4 (N.D. Cal. Apr. 29, 2010) (noting that Labor Code

13

section 226.7 provides recovery for one meal break violation per work day and one rest break violation per work day).

41.    The statute of limitations for recovery for meal or rest period premium pay under California Labor Code section 226.7 pay is three years. *Murphy v. Kenneth Cole Prods.*, Inc., 40 Cal. 4th 1094, 1099 (2007) ("[T]he remedy provided in Labor Code section 226.7 constitutes a wage or premium pay and is governed by a three-year statute of limitations."). However, Plaintiff alleges a claim for meal and rest break premiums pay as part of his unfair competition claim under Business and Professions Code section 17200, *et seq.* (Ex. A, Complaint, ¶¶ 18(r), 83.) Although Defendant contend that meal and rest break premium pay cannot be recovered under Business and Professions Code section 17200 (*Pineda v. Bank of America, N.A.*, 50 Cal. 4th 1389, 1401 (2010)), according to the allegations of Plaintiff's Complaint, the four-year statute of limitations applies for purposes of removal. Cal. Bus. & Prof. Code § 17208. Thus, for determining the amount in controversy, the four-year statute of limitations applies.

42.    Plaintiff is silent as to the amount of alleged meal periods or rest periods he claims to have been denied, thereby precluding precise estimates of the amount in controversy. Because Plaintiff alleges that Defendant had a "policy and practice" of not providing the putative class with all meal periods and rest periods (Ex. A, Complaint, ¶¶ 9-11, 38, 39, 46), while also alleging that Plaintiff's claims "are typical of all Class Members. Plaintiff, like all other Class Members, was subjected to the policies and practices set forth above. Plaintiff's job duties were typical of Class Members in all respects" (Ex. A, Complaint, ¶ 16), the Complaint contemplates a 100% violation rate for the meal period and rest period claims. Accordingly, a 100% violation rate can properly be assumed for purposes of calculating the amount in controversy of Plaintiff's meal and rest period claims. *See Muniz*, 2007 WL 1302504, at *4 (citing *Caterpillar, Inc.*, 482 U.S. at 392 (finding a 100 percent violation rate appropriate when "plaintiff includes no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%").

14

43.    While Defendants are entitled to assume a 100 percent violation rate (*i.e.*, five missed meal periods and five missed rest periods per workweek) based on the allegations in the Complaint, Defendant will conservatively assume that putative class members were not provided **just one meal periods and one rest period each workweek**.[1]  Where Plaintiff has alleged a policy and practice of meal and rest period violations, it is reasonable to assume that there at least one meal period **or** one rest period violation each week for every employee.  Indeed, district courts have consistently upheld even higher assumptions of meal period and rest period violations as plausible for purposes of determining the amount in controversy.  *See, e.g.*, *Wheatley*, 2019 WL 688209, at *6 (C.D. Cal. Feb. 19, 2019) (finding an estimate of five meal period and three rest break violations per week reasonable where Plaintiff alleged a "a policy and practice" of meal and rest break violations); *Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147, 1151 (S.D. Cal. 2018) ("Defendant conservatively assumed the putative class members were not provided … three of ten rest periods they were entitled to receive each work week, even though assumption of a 100 percent violation rate may have been reasonable based on allegations in the Complaint. The Court therefore we finds Defendant's assumed violation rates reasonable"); *Agredano v. Sw. Water Co.*, 2017 WL 2985395, at *6 (C.D. Cal. May 30, 2017) ("Plaintiff further alleges that Defendant 'routinely' and 'consistently' failed to provide him and the putative class members with the required 30–minute lunch break periods.  Plaintiff does not limit the number of violations alleged in his Complaint, nor has he offered any evidence that he or other putative class members missed fewer than five legally required meal breaks per week. Thus, the Court finds that 'Plaintiff's own complaint alleges universal violations of meal ... period laws' such that Defendant's 'use of a 100% violation rate [five missed meal periods] is proper.'"); *Mejia*

---

[1]/    Plaintiff cannot allege that this action involves common questions of law and fact as to the Class and Subclasses that predominate over individual questions (Ex. A, Complaint, ¶ 18), without also implicitly alleging that each putative class member suffered at least one meal period and one rest period violation per week based on a "policy and practice."

15

*v. DHL Express (USA), Inc.*, 2015 WL 2452755, at *4 (C.D. Cal. May 21, 2015) (finding an estimate of five missed rest periods a week reasonable where plaintiff alleged that defendant maintained "policies, practices and procedures that caused the purported violations. . ."); *Lopez v. Aerotek, Inc.*, 2015 WL 2342558, at *2 (C.D. Cal. May 14, 2015) (finding defendant's estimate of five meal period and five rest period violations was reasonable); *Coleman v. Estes Express Lines*, Inc., 730 F. Supp. 2d 1141, 1150 (C.D. Cal. 2010) ("Plaintiff included no limitation on the number of violations, and, taking his complaint as true, Defendant could properly calculate the amount in controversy based on a 100% violation rate," i.e., 5 missed meal periods and five missed rest breaks per week). *Accord Arias*, 936 F.3d at 926 (holding that "Marriott's assumptions are plausible" where it assumed "one missed rest break" as the "lowest assumed violation rate").

44.    As stated above, during the relevant time period identified in the Complaint, Defendant Raypak employed approximately 340 non-exempt hourly employees in California, who worked a total of approximately 56,823 workweeks.  (Irwin Decl., ¶ 5.) The average hourly rate of pay for these individuals is approximately $32.59 per hour during the proposed class period.  (Irwin Decl., ¶ 6.)

45.    Although Defendants deny that Plaintiff (or any putative class member) is entitled to any meal or rest period premium payments, assuming **just one meal period violation and one rest period violation per week** for each putative class member, the amount in controversy would be approximately $**3,703,723.14** [(56,823 workweeks) * ($32.59 per hour) * (2 premium payments per week – one meal and one rest)].  If 100% liability is assumed, or 5 meal period premiums and 5 rest break premiums per week, the amount in controversy would be $18,518,615.70 [(56,823 workweeks) * ($32.59 per hour) * (10 premium payments per week – five meal and five rest)]  Accordingly, the amount in controversy on Plaintiff's meal and rest period claims is conservatively at least $**3,703,723.14,** but as high as $18,518,615.70.

### 2.    Unpaid Minimum Wage And Overtime Claims

16

81746848v.2

46.     Plaintiff's Complaint alleges that Defendants failed to pay minimum wages because "Raypak has implemented a uniform time clock rounding policy that results in Class Members being consistently denied minimum wages and overtime compensation for all hours worked.  Upon information and belief, rather than paying wages based on time actually worked, Raypak rounds each clock-in and clock-out to the nearest 5 or 10-minute interval, resulting in underpayment when, for example, an employee clocks in a minute early or clocks out a minute late, or both.  Upon information and belief, this rounding policy results in the systematic underpayment of employee wages over time and in the aggregate.  (Ex. A, Complaint, ¶ 8.)  Plaintiff's Complaint further alleges that "Defendants also failed to compensate Plaintiff and the Class for all hours worked because Defendants had a policy and/or practice whereby they required and or/or pressured Class Members to arrive early to work and remain under Defendants' control while off-the-clock.  Class members were also required to take late and/or interrupted unrecorded meal periods but were deprived of hours worked through Defendants' auto-deduct policy, which underpaid them by 30 minutes for shifts where they didn't take a meal period or it was truncated."  (Ex. A, Complaint, ¶ 24.)

47.     Plaintiff claims that "Pursuant to Labor Code section 1194.2, Plaintiff and Class Members are entitled to recover the amount of underpaid wages, plus liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon, along with other applicable penalties"  (Ex. A, Complaint, ¶ 27.)

48.     Plaintiff further asserts "Throughout the Class Period, Class Members were not paid overtime premiums for all of the hours they worked in excess of eight hours in a day, in excess of twelve hours in a day, in excess of eight hours on the seventh consecutive day in a workweek, and/or in excess of forty hours in a week, because all hours worked were not recorded as compensable time as a direct consequence of Defendants' policies and practices, including without limitation its rounding and auto-deduct policies. (Ex. A, Complaint, ¶ 32.)

17

DEFENDANT BENDURE'S NOTICE OF REMOVAL

81746848v.2

49.    Plaintiff claims that "Pursuant to Labor Code section 1194, "Plaintiff and Class Members are entitled to recover their unpaid overtime compensation, as well as interest, costs, and attorneys' fees, and applicable civil penalties." (Ex. A, Complaint, ¶ 33.)

50.    As stated above, during the relevant time period identified in the Complaint, Defendant employed approximately 340 non-exempt hourly employees in California, who worked a total of approximately 56,823 workweeks. (Irwin Decl., ¶ 5.) The average hourly rate of pay for these individuals is approximately $32.59 per hour during the proposed class period. (Irwin Decl., ¶ 6.)

51.    Plaintiff does not, however, provide any definitive details in terms of how many hours per day or week he and the putative class members allegedly worked without compensation. Yet, Plaintiff does allege that "Class members were also required to take late and/or interrupted unrecorded meal periods but were deprived of hours worked through Defendants' auto-deduct policy, which underpaid them by 30 minutes for shifts where they didn't take a meal period or it was truncated." (Ex. A, Complaint, ¶ 24.) As discussed above, it is reasonable to assume based on Plaintiff's allegations that one meal period was missed or not provided per week. Assuming, based on Plaintiff's own allegations, 30 minutes of unpaid minimum wages per putative class member per week, the amount in controversy for unpaid minimum wages would be at least **$925,930.78** (56,823 workweeks) * ($32.59 per hour) * (0.5 hours per week). Similarly, Plaintiff alleges "Plaintiff and Class Members are entitled to recover the amount of underpaid wages, plus liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon, along with other applicable penalties" (Ex. A, Complaint, ¶ 27.) As a result, Plaintiff is reasonably seeking at least an additional **$925,930.78** in liquidated damages, leaving the amount in controversy for the unpaid wages claims at least **$1,851,861.56,** which excludes any additional unpaid time for alleged off-the-clock work, time rounding, or payment of wages at an overtime premium rate.

### 3.    Wage Statement Penalties

18

52.     Plaintiff's Complaint alleges that "At all relevant times to this Complaint, Defendants' failure to pay premium wages for missed rest periods and minimum and/or overtime wages for work-off-the-clock rendered Class Members' wage statements inaccurate by failing to accurately reflect gross and net wages earned." (Ex. A, Complaint, ¶ 55.)  Based on this alleged violation, Plaintiff claims that he and other class members are each entitled to recover up to a maximum of $4,000.00." (Ex. A, Complaint, ¶ 59.)

53.     Labor Code § 226(e) provides a minimum of $50 for the initial violation as to each employee, and $100 for each further violation as to each employee, up to a maximum penalty of $4,000 per employee.  The statute of limitations for recovery of penalties under Labor Code § 226 is one year.  *Caliber Bodyworks, Inc. v. Sup. Ct*., 134 Cal. App. 4th 365, 376 (2005); Cal. Civ. Proc. Code § 340(a).  Plaintiff filed his Complaint on February 25, 2022.  Therefore, the statutory period for a claim under California Labor Code § 226 runs from February 25, 2021 to the present.

54.     Defendant Raypak pays its non-exempt employees every week.  (Irwin Decl., ¶ 8.)  Accordingly, there are 52 pay periods per year.  (*Id.*)

55.     During the period of February 25, 2022 through April 15, 2022, there were approximately 321 hourly, non-exempt employees who worked for Defendant Raypak, who worked approximately 12,780 weekly pay periods during this time period.  (Irwin Decl., ¶ 9.)  Thus, the amount in controversy assuming liability for only every other pay period for Plaintiff's wage statement claim is **$622,950** [($50 for the 321 first pay periods) + ($100 for each of the subsequent 6,069 pay periods)].

### 4.     Approximate Aggregate Amount In Controversy

56.     Although Defendants deny Plaintiff's allegations that he or the putative class are entitled to any relief for the above-mentioned claims, based on the forgoing calculations, the aggregate amount in controversy for the putative class for all asserted claims, excluding Plaintiff's claims for waiting time penalties and expense

reimbursement, and exclusive of attorneys' fees, is conservatively **$6,178,534.70**, calculated as follows:

| | | |
|---|---|---|
| · | **$3,703,723.14,** | Meal/Rest Period Claim (Assuming Just 1 Missed Meal Period and 1 Missed Rest Period Per Workweek, with liability as high as **$18,518,615.70** with a 100% violation rate) |
| | **$32,211,619.20** | Unpaid minimum wages and liquidated damages (Assuming one 30 minute unpaid period per week based on Plaintiff's allegations, but not factoring the possibility of 5 30-minute violations per week, overtime rate of pay, or unpaid time based on rounding or off-the-clock work) |
| · | **$622,950** | Wage Statement Penalties |

57.    The figures above do not take into account Plaintiff's claim for unpaid overtime wages, waiting time penalties, unreimbursed business expenses, or attorneys' fees and costs.

### 5.    Attorneys' Fees

58.    Plaintiff also seeks attorneys' fees.  (Ex. A, Complaint, ¶ 18(p), 33, 52, 60, 87, Prayer for Relief)  Requests for attorneys' fees must also be taken into account in ascertaining the amount in controversy.  *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (claims for statutory attorneys' fees are to be included in amount in controversy, regardless of whether award is discretionary or mandatory); *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1010-11 (N.D. Cal. 2002) ("Where the law entitles the prevailing plaintiff to recover reasonable attorney fees, a reasonable estimate of fees likely to be incurred to resolution is part of the benefit permissibly sought by the plaintiff and thus contributes to the amount in controversy").

59.    A reasonable estimate of fees likely to be recovered may be used in calculating the amount in controversy.  *Longmire v. HMS Host USA, Inc.*, 2012 WL 5928485, at *9 (S.D. Cal. Nov. 26, 2012) ("[C]ourts may take into account reasonable estimates of attorneys' fees likely to be incurred when analyzing disputes over the

amount in controversy under CAFA.") (*citing Brady*, 243 F. Supp. 2d at 1010-11); *Muniz*, 2007 WL 1302504 at *4 (attorneys' fees appropriately included in determining amount in controversy).

60.    In a recent decision, the Ninth Circuit held that "a court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met." *Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018); *see also Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414-15 (9th Cir. 2018) ("[T]he amount in controversy is not limited to damages incurred prior to removal—for example, it is not limited to wages a plaintiff-employee would have earned before removal (as opposed to after removal). Rather, the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious."); *Lucas v. Michael Kors (USA), Inc.*, 2018 WL 2146403 (C.D. Cal. May 9, 2018) (holding that "unaccrued post-removal attorneys' fees can be factored into the amount in controversy" for CAFA jurisdiction).

61.    Indeed, the Ninth Circuit again very recently explicitly confirmed that "when a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy," including in the context of determining CAFA jurisdiction and as a "principle[] that appl[ies] in CAFA removal cases." *Arias*, 936 F.3d at 922.

62.    In the class action context, courts have found that 25 percent of the aggregate amount in controversy is a benchmark for attorneys' fees award under the "percentage of fund" calculation and courts may depart from this benchmark when warranted. *See, e.g.*, *Wheatley*, 2019 WL 688209, at *6 (C.D. Cal. Feb. 19, 2019) (finding that an estimate of attorney's fees of 25% reasonable); *Ramos v. Schenker, Inc.*, 2018 WL 5779978, at *3 (C.D. Cal. Nov. 1, 2018) ("[T]the 25% benchmark provides a non-speculative guidepost for assessing jurisdiction."); *Campbell v. Vitran Exp., Inc.*, 471 F. App'x 646, 649 (9th Cir. 2012) (attorneys' fees appropriately included in determining

DEFENDANT BENDURE'S NOTICE OF REMOVAL

amount in controversy under CAFA); *Powers v. Eichen*, 229 F.3d 1249, 1256-57 (9th Cir. 2000) ("We have also established twenty-five percent of the recovery as a 'benchmark' for attorneys' fees calculations under the percentage-of-recovery approach"); *Wren v. RGIS Inventory Specialists*, 2011 U.S. Dist. LEXIS 38667 at *78-84 (N.D. Cal. Apr. 1, 2011) (finding ample support for adjusting the 25% presumptive benchmark upward and found that plaintiffs' request for attorneys' fees in the amount of 42% of the total settlement payment was appropriate and reasonable in the case); *Cicero v. DirecTV, Inc.*, 2010 U.S. Dist. LEXIS 86920 at *16-18 (C.D. Cal. July 27, 2010) (finding attorneys' fees in the amount of 30% of the total gross settlement amount to be reasonable); *see also In re Quintas Secs. Litig.*, 148 F. Supp. 2d 967, 973 (N.D. Cal. 2001) (noting that in the class action settlement context the benchmark for setting attorneys' fees is 25 percent of the common fund). Even under the conservative benchmark of 25 percent of the total amount in controversy for Plaintiff's claims, attorneys' fees alone would be upward of **$1,544,633.67** in this case [$6,178,534.70 amount in controversy * 0.25].

63.    Although Defendant denies Plaintiff's allegations that he or the putative class are entitled to any relief, based on Plaintiff's allegations and prayer for relief, and a conservative estimate based on those allegations, the total amount in controversy is at least **$7,723,168.37**, including attorneys' fees. This total amount in controversy far exceeds the $5,000,000 threshold set forth under 28 U.S.C. § 1332(d)(2) for removal jurisdiction.

64.    Accordingly, because diversity of citizenship exists, and the amount in controversy exceeds $5,000,000, this Court has original jurisdiction of this action pursuant to 28 U.S.C. section 1332(d)(2). This action is therefore a proper one for removal to this Court pursuant to 28 U.S.C. section 1441(a).

65.    To the extent that Plaintiff has alleged any other claims for relief in the Complaint over which this Court would not have original jurisdiction under 28 U.S.C.

22

81746848v.2

section 1332(d), the Court has supplemental jurisdiction over any such claims pursuant to 28 U.S.C. section 1367(a).

**IV.   VENUE**

66.    Venue lies in the United States District Court for the Central District of California, pursuant to 28 U.S.C. §§ 1391(a), 1441, and 84(a).  This action originally was brought in Ventura County Superior Court of the State of California, which is located within the Central District of California.  28 U.S.C. § 84(a).  Therefore, venue is proper because it is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

67.    A true and correct copy of this Notice of Removal will be promptly served on Plaintiff and filed with the Clerk of the Ventura County Superior Court of the State of California as required under 28 U.S.C. § 1446(d).

**V.   NOTICE TO STATE COURT AND TO PLAINTIFF**

68.    Defendant will give prompt notice of the filing of this Notice of Removal to Plaintiff and to the Clerk of the Superior Court of the State of California in the County of Ventura.  The Notice of Removal is concurrently being served on all parties.

**VI.   DEFENDANT RAYPAK, INC. CONSENTS TO REMOVAL**

69.    Defendant is informed that Defendant Raypak, Inc. consents to this removal and will file a notice of consent contemporaneously with this removal.

**VII.   PRAYER FOR REMOVAL**

70.    WHEREFORE, Defendant pray that this civil action be removed from Superior Court of the State of California for the County of Ventura to the United States District Court for the Central District of California.

23

81746848v.2

DATED:  April 20, 2022

Respectfully submitted,

SEYFARTH SHAW LLP

By: ___/s/ Brian P. Long___
Brian Long
Reiko Furuta
Attorneys for Defendants RAYPAK, INC. and RICH BENDURE

24